UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JUAN CARLOS GONZALEZ RAMIREZ,

                    Plaintiff,

     -against-

ADDY HOSPITALITY LLC d/b/a RUST & GOLD,
FRANK ANTONETTI, an individual, LOUIS COHEN,
an individual, and JASON JANAWSKY, an individual,

                  Defendants.
----------------------------------------------------------------X

**MEMORANDUM**
**DECISION AND ORDER**
2:21-cv-03768 (JMW)

Raymond Nardo, Esq.
**RAYMOND NARDO, P.C.**
129 Third St
Mineola, NY 11501
*For Plaintiff Juan Carlos Gonzalez Ramirez*

Nino J. Caridi, Esq.
**NINO CARIDI LAW, P.C.**
61 Hilton Ave., Suite 33
Garden City, NY 11530
*For All Defendants*

**WICKS,** Magistrate Judge:

## I.     BACKGROUND

Plaintiff Juan Carlos Gonzalez Ramirez commenced this action against Defendants Addy Hospitality d/b/a Rust & Gold ("Rust & Gold"), Frank Antonetti, Louis Cohen, and Jason Janawsky by way of Complaint on July 5, 2021. (DE 1.) The action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA") and the New York Labor Law § 190, *et seq.* ("NYLL"), upon Plaintiff's allegations that Defendants failed to pay minimum wage and premium overpay for his time worked as a cook at Rust & Gold. (DE 1.) Plaintiff seeks damages for his

1

period of employment from July 20, 2022, through May 30, 2021. (DE 14.) During this period, Plaintiff's hours varied from approximately 35 to 67 hours per week.[1] (*Id.*) Plaintiff alleges Defendants paid Plaintiff straight time for all hours worked. (*Id.*)

On July 12, 2022, the parties jointly moved in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), for approval of the parties' settlement agreement. (DE 14.) All parties have signed a consent form, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, granting this Court power to conduct all proceedings in this matter and enter final judgement. (DE 15.) For the following reasons, the motion for settlement approval is GRANTED.

## II.     STANDARD FOR APPROVING FLSA SETTLEMENTS

Federal Rule of Civil Procedure 41 provides, in relevant part, that:

> Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
> (i)     a notice of dismissal before the opposing party serves either an answer of a motion for summary judgment; or
> (ii)    a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A).

In *Cheeks*, the Second Circuit held that the FLSA is an "applicable federal statute" under Rule 41 because of "the unique policy considerations underlying" the act. 796 F.3d at 206. Such considerations include the laudable aim of "'extend[ing] the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Id*. (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). Accordingly, in this Circuit, Rule 41's "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Id*.

---

[1] Plaintiff originally pled that his period of employment ranged from July 13, 2020, to May 28, 2021, and that during this period, he worked 6 days per week – approximately 50 – 54 hours – but received only $11 per hour, no overtime pay, and no half-hour break. (DE 1.)

"Generally, if the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved" by the reviewing court. *Ceesae v. TT's Car Wash Corp.*, 17 CV 291 (ARR) (LB), 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018) (internal quotation marks and citation omitted) *report and recommendation adopted by* 2018 WL 741396 (Feb. 7, 2018). In reviewing the reasonableness of the proposed settlement, courts consider the totality of the circumstances, including relevant factors such as:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks and citations omitted) ("*Wolinsky* Factors").

Factors weighing *against* settlement approval include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Id*. (internal quotation marks and citations omitted).

Even if an application of the *Wolinsky* Factors demonstrates that the agreement is reasonable, the court must also consider whether the settlement "complies with the Second Circuit's admonitions as articulated in *Cheeks*." *Ezpino v. CDL Underground Specialists, Inc.*, 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017) (citation omitted), *report and recommendation adopted by* 2017 WL 3037406 (E.D.N.Y July 17, 2017). Specifically, courts should guard against "highly restrictive confidentiality provisions," overbroad releases that "would waive practically any possible claim against the defendants, including unknown claims

and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation." *Cheeks*, 796 F.3d at 206 (citation omitted). Related to the final admonition, courts must also ensure that any attorney's fees provided for in the agreement are reasonable. *See* 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a *reasonable* attorney's fee to be paid by the defendant, and costs of the action."); *see also Ceesae*, 2018 WL 1767866 at *2 (noting that courts engaging in a *Cheeks* review must "evaluate[] the reasonableness of any attorney's fees included in the proposed settlement") (citing 29 U.S.C. § 216(b)).

Against this backdrop, the Court reviews the proposed settlement and motion.

### III.  DISCUSSION

After an informal discovery and several negotiations, the parties achieved a proposed settlement agreement ("Settlement Agreement"). (*See* DE 14.) On June 28, 2022, the parties executed that agreement, which was filed on July 12, 2022. (DE 14-1.) Thereunder, Plaintiff's claims would be dismissed with prejudice against Defendants, who would pay Plaintiff $20,000 in valid consideration. (*Id.*) Plaintiffs' counsel would receive $6,667, one-third of the total settlement amount. (*Id.*) For the reasons set forth below, the Court finds that the monetary and non-monetary terms of the settlement are fair and reasonable under *Cheeks*.

*Reasonableness of the Settlement*

Based on the parties' submissions—the parties' request of settlement approval (DE 14), the Settlement Agreement (DE 14-1), and Plaintiff's counsel's timesheets and attorneys' experience/qualifications (DE 14-2)—the Court finds that application of the *Cheeks* factors favor approval.

4

*First*, the Settlement Agreement provides for a total payment of $20,000, two-thirds of which will be paid to Plaintiff as compensation for the alleged unpaid overtime wages and Wage Theft Prevention Act ("WTPA") penalties. (DE 14.) The $20,000 is set to be distributed using a payment schedule as set forth in section 1(A) of the Settlement Agreement. (*Id.*) Plaintiff alleges that from July 20, 2020, through May 30, 2021, he worked between 35 and 67 hours a week; that he was paid no overtime; and that these alleged violations are upwards of $23,000. (DE 14.) Plaintiff believes that a settlement for $20,000—rather than risk the case's outcome at trial for $23,000—is a prudent decision that would avoid the costs, burdens, and risks of future litigation. In response, Defendants assert that the settlement is fair and reasonable for the same reasons: it will help to avoid burdens and expenses, motion practice, trial, and counsel's fees.

*Second*, the Court agrees with Plaintiff that settlement will avoid extensive litigation costs by avoiding further document drafting, researching, and engaging in further communications. (*See* DE 14.) The proposed settlement allows the parties to avoid inevitable burdens and expenses in the months it would take to ultimately bring this to trial. Thus, this factor weighs in favor of approval.

*Third*, there is a legitimate legal dispute between the parties, and settlement is a means of avoiding significant litigation risks for both. The parties jointly present calculations of approximately $13,000 in base lost wages and $10,000 in WTPA penalties: together, a $23,000 sum. (DE 14.) As per the joint motion, Defendant notes that the fee shifting nature of the FLSA could result in a larger fee award, should this matter proceed to trial. (DE 14.) Given the nature of the dispute, Defendants reasonably believe paying the $20,000 sum now, as opposed to the potentially larger judgment and Plaintiff's attorneys' fees, would be advantageous.

5

*Fourth*, the Court finds that the parties have properly engaged in bargaining at arms-length to reach the settlement agreement. All parties are represented by counsel well experienced in this field. Plaintiff's counsel, Raymond Nardo, has practiced labor and employment law for 30 years, serves as a guest lecturer at the National Business Institute, and has written professionally on the subject. Defendant's counsel, Nino Caridi, has been practicing labor and employment law for 10 years and is well experienced in defending FLSA actions such as this one. The parties' cooperation is further shown by their meeting, conferring, and submission of joint calculations. (DE 14.)

*Fifth*, the parties and counsel negotiated in good faith and agreed upon the terms within the settlement agreement. (*Id.*) Plaintiff represents, and the ultimate number indeed reflects, that all parties made compromises on their positions to achieve a fair and reasonable settlement. (*Id.*) The record bears no signs that this settlement is a product of fraud, coercion, or collusion.

Next, the Court will address the *Wolinsky* factors that weigh against settlement. For the reasons to follow, the factors do not compel rejection of the proposed settlement.

*First*, though the record shows no evidence indicating whether there are similarly situated Plaintiffs, the text of the settlement agreement will not preclude their claims. The release provision of the Settlement Agreement states, "Plaintiff agrees that he is waiving all claims that *he* could have asserted against Defendants under the Fair Labor Standards Act and/or New York Labor Law[.]" (DE 14-1) (emphasis added). The plain text of the document, coupled with the corresponding lack of evidence as to the existence of similarly situated Plaintiffs, equates to a fairly weak showing of the first *Wolinsky* factor.

*Second*, given the time and resources spent during the litigation process, and the issues regarding Defendants' financial viability, is likely that Defendants will be deterred from violating

6

the FLSA. Because the Plaintiff no longer works at Defendants' deli (DE 1), it is also unlikely the claimant's individual circumstances will recur.

*Third*, the record offers no history previous non-compliance with the FLSA by Rust & Gold, nor have the parties suggested otherwise. Thus, this factor holds little weight.

*Fourth*, the desirability for a mature record is weak. The parties jointly submitted calculations to approximate damage, so a further record to substantiate that record is unnecessary. The Court acknowledges that although maturation of the record could lead to further developments, this factor alone does not require the Court to reject the proposed settlement. *See Garcia v. Grandpa Tony's Enterprises LLC*, No. 20-CV-4691 (JMW), 2021 WL 4949030, at *3 (E.D.N.Y. Oct. 25, 2021) ("Last, although an argument could be made that maturation of this record could lead to further legal development in FLSA cases, this factor alone does not require the Court to reject the proposed settlement agreement").

Lastly, the proposed settlement agreement does not contain any of the problematic provisions that are flagged in *Cheeks*. First, it contains no confidentiality provision. (DE 14-1.) Second, while the Settlement Agreement contains a release, it is not overbroad. Indeed, it is limited to Plaintiff's FLSA and NYLL claims raised in this lawsuit. (*Id.*) The clause is aimed at preventing frivolous litigation arising out of facts and claims from the Complaint. Third, the Plaintiff's counsel's expenses and fees equate to less than the contracted one-third of the settlement amount. (*Id.*) Moreover, as discussed more fully below, Plaintiffs' counsel has provided documentation supporting the proposed attorneys' fees, which the Court finds to be fair and reasonable.

### *Attorneys' Fees*

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016)

(citation omitted). Courts in this Circuit routinely approve of one-third contingency fees for FLSA cases. *See, e.g.*, *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 12, 2014) (citing *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 CV 3234, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013)); *see also Fischer v. SD Protection Inc.*, 948 F.3d 593, 602 n.8 (2d Cir. 2020) (citing cases); *Singh v. MDB Construction Mgmt., Inc.*, No. 16-CV-5216 (HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate").

Even where fees are reasonable when analyzed under the percentage method, courts will additionally perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, 17 Civ. 9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *see also In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388–89 (S.D.N.Y. 2013) ("Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable.") (quoting *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009)).

Here, Plaintiff's counsel requests $6,667 out of the $20,000 settlement. Plaintiff's counsel incurred $627 in costs, which brings the actual counsel fee to $6,040, less than the standard one-third of the overall settlement amount. *See Calle*, 2014 WL 6621081, at *3 ("A one-third contingency fee is a commonly accepted fee in this Circuit"). In support of this request, Plaintiff

8

submitted timesheets conveying the attorneys' billing rates, description of services and the hours worked.[2] (DE 14-2.) The Court finds that $625 in expenses and costs were incidental and necessary to represent Plaintiff and reach a settlement in this matter. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients") (internal quotation marks omitted). Accordingly, the Court finds this request for costs and fees reasonable.

"[E]ven when the proposed fees do not exceed one third of the total settlement amount, courts in this circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Navarro Zavala v. Trece Corp.*, No. 18-CV-1382 (ER), 2020 WL 728802, at *2 (S.D.N.Y. Feb. 13, 2020) (quotation and citation omitted). In utilizing the lodestar approach, courts multiply the number of hours spent on a case by an attorney's reasonable hourly rate. *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

Plaintiff asserts that Raymond Nardo, an attorney with 30 years' experience in similar matters, billed 7.8 hours working on this case at a rate of $450 per hour. (DE 14-2.) The Court finds this billing rate for Mr. Nardo reasonable. *See e.g.*, *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 103 (E.D.N.Y. 2020) (noting that "Courts in this District have approved the following hourly rates for attorneys practicing in the Eastern District of New York: $300 to $450 for partners in law firms, $200 to $325 for senior associates, and $100 to $200 for junior associates," and collecting cases). Multiplying $450 per hour by 7.8 hours worked yields a lodestar

---

[2] Defendants have not taken a position regarding Plaintiffs' application for attorneys' fees and costs. (DE 14.)

of $3,510. The lodestar multiplier—the fee requested ($6,040) divided by the lodestar calculation ($3,510)—is 1.72, well below the range of problematic multipliers.[3] *See Cohan v. Columbia Sussex Mgmt., LLC*, 12-CV-3203, 2018 WL 4861391, at *5 (E.D.N.Y. Sept. 28, 2018) ("Courts regularly award lodestar multipliers from two to six times lodestar") (citing *Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 WL 4357376, at *16 (S.D.N.Y. Sept. 16, 2011). The Court finds the overall number of hours exerted on this matter to be reasonable, considering the length of time to commence the action, negotiations, and communications.

In sum, the Court concludes that the requested attorneys' fees and costs are reasonable and therefore appropriate.

## IV. CONCLUSION

For the foregoing reasons, the parties' motion for approval of the Settlement Agreement is GRANTED. Accordingly, Plaintiff's claims are DISMISSED WITH PREJUDICE. The parties shall file a Stipulation of Dismissal with Prejudice on or before November 17, 2022, and the Court will direct the Clerk's Office to close this case thereafter.

Dated: Central Islip, New York
       October 17, 2022

S O   O R D E R E D:

/s/ *James M. Wicks*
    JAMES M. WICKS
    United States Magistrate Judge

---

[3] Plaintiff's counsel erroneously included costs into its lodestar calculation, which should only include the number of hours spent by counsel on the matter multiplied by the hourly rate. *See e.g.*, *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 258 (E.D.N.Y. 2020) ("Multiplying $350.00 per hour times 88.1 hours yields a lodestar of $30,835.00"); *Martinez v. City of New York*, 330 F.R.D. 60, 66 (E.D.N.Y. 2019) ("Courts employ the "lodestar" method in calculating reasonable attorney's fees, multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate"). Even so, based on either calculation the lodestar multiplier (i.e., 1.61 with costs included, 1.72 without costs included) is well within the acceptable figure.